[No. B123085. Second Dist., Div. Three. June, 29, 2000.]

ARTEENA RUBENSTEIN, Plaintiff and Appellant, v.
ALAN DOUGLAS RUBENSTEIN, Defendant and Respondent.

**COUNSEL**

Alexander Lebecki for Plaintiff and Appellant.

Rosenfeld, Meyer & Susman, Ovvie Miller and John Carmichael for Defendant and Respondent.

## OPINION

**KLEIN, P. J.**—Plaintiff and appellant Arteena Rubenstein (Arteena) appeals a judgment following a grant of summary judgment in favor of defendant and respondent Alan Douglas Rubenstein (Alan).[1]

This is a civil action by Arteena to set aside on the grounds of fraud and perjury a 1994 judgment in a marital dissolution proceeding obtained in the family court, and to recover damages. The essential issues presented are the applicable statute of limitations, the scope of the available remedy, and thereafter, whether this action is time-barred. The trial court granted Alan's motion for summary judgment on statute of limitations grounds.

We conclude this action is controlled by Family Code section 2122,[2] which prescribes a one-year statute of limitations for an action to vacate a dissolution judgment on the grounds of fraud or perjury. The remedy under the statute is a setting aside of the judgment, not a tort action for concealment of community assets. The one-year period begins to run from the date on which the plaintiff either discovered, or should have discovered, the *facts* constituting the fraud or perjury. (§ 2122; see Code Civ. Proc., § 338, subd. (d).)

The record discloses that Alan failed to meet his burden, as a defendant moving for summary judgment, of establishing Arteena either discovered or should have discovered his alleged fraud or perjury more than one year before she commenced this action. Therefore, the judgment must be reversed.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties began living together in 1970, had a daughter in 1972, were married in 1976 and separated in 1984.

1. *The dissolution proceeding.*

Alan filed a petition for dissolution in 1986. His petition alleged there were no community assets. Alan's property declaration in the dissolution

---

[1]As is customary in family law proceedings, we refer to the parties by their first names for purposes of clarity and not out of disrespect. (See *In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1704, fn. 1 [30 Cal.Rptr.2d 306]; *Askew v. Askew* (1994) 22 Cal.App.4th 942, 947, fn. 6 [28 Cal.Rptr.2d 284].)

[2]All further statutory references are to the Family Code, unless otherwise indicated.

proceeding, made under penalty of perjury, listed the following assets: $15,000 in household furniture, furnishings, and appliances; $3,000 in jewelry, antiques, art, and coins; a 1975 Jaguar automobile with a value of $10,000; and business interests consisting of the Alan Douglas Corporation with a gross fair market value of $1,000.

In opposition papers filed on September 4, 1986, Arteena raised a claim, based on information and belief, that Alan possessed the ownership rights to the music of Jimi Hendrix and George Clinton, rights in which she had a community interest. Specifically, a declaration filed September 4, 1986, by Arteena's attorney, Robert J. Schupler, asserted: "I am informed and believe and thereon allege that [Arteena] has a community property interest in musical works owned by [Alan] including but not limited to works by Jimi Hendrix and George Clinton."

Arteena subsequently filed trial briefs in which she accused Alan of perjury on the basis that he had hidden assets from the court in that he had received income from the estate of Jimi Hendrix and from Are You Experienced? Ltd., the company that marketed Jimi Hendrix's works.

Six years after the filing of the petition for dissolution, the matter finally came to trial. On February 6, 1992, a 45-minute trial was held. Alan testified he never had any ownership interest either in Are You Experienced? Ltd., or in the Hendrix estate and that he had never acquired any royalty or other interest in the record catalogs involving Hendrix, except for three records he produced prior to the marriage.

The court found there were no community assets subject to the court's disposition and ordered Alan to pay spousal support of $3,000 per month, until September 1, 1992, at which time support would be reduced to $1,500 per month until June 1, 1993.

On March 5, 1992, Arteena filed motions to vacate the judgment and for new trial on the ground Alan gave false testimony at trial and that she had newly discovered evidence regarding community property. The matter ultimately was continued to October 19, 1992, to allow Arteena time to conduct discovery concerning her claims.

Following the hearing, on October 19, 1992, the court signed and filed a further judgment on reserved issues, which included a finding that "[t]there are no community assets."

Arteena appealed, contending, inter alia, the court erred in disregarding her evidence that there was community property. In an opinion filed June 13, 1994, Division Seven rejected Arteena's contentions and affirmed.

2. *The instant action filed in civil court to vacate the judgment and to recover damages.*

Arteena's instant action, seeking equitable relief from the judgment as well as tort damages, was a hybrid. ██ ██ It was litigated in the civil court, although it involved Family Code provisions and an underlying judgment of dissolution from the family court.[3] As explained below, section 2120 et seq. were enacted to resolve this confusion by clarifying the nature of the relief available from a dissolution judgment, as well as the time frame for seeking such relief.

a. *Pleadings included tort causes of action.*

On May 1, 1997, Arteena filed this action to set aside the further judgment on reserved issues in the marital dissolution proceeding, alleging Alan procured that judgment through perjury and fraud.

Arteena subsequently filed a first amended complaint, the operative pleading, seeking to vacate the dissolution judgment and to recover damages. Arteena alleged the following theories: "1. To Set Aside Judgment; 2. Injunctive Relief; 3. Breach of Fiduciary Duty; 4. Constructive Fraud; 5. Intentional Non-Disclosure—Concealment; 6. Negligent Non-Disclosure—Concealment; 7. Accounting; 8. Conspiracy; 9. Conversion; 10. Imposition of Constructive Trust."

Arteena's complaint requested judicial notice of an answer and counterclaim filed by Alan on January 6, 1994, in *Hendrix v. Branton* (D. Wash., No. C93-5372), an action in the federal district court in Seattle (hereafter, the federal action). A copy of said pleading in the federal action was appended to Arteena's complaint as an exhibit. Alan's answer and counterclaim in the federal action contained, inter alia, the following allegations: "[Alan's] monumental efforts *over a period of 20 years* have been the lifeblood of the continued success and popularity of Jimi Hendrix music[;]" "[Alan's] *proprietary rights* in Jimi's recordings have contributed to perpetuate the music; [Alan] has produced new recordings, enhanced the technical quality of the entire catalogue, acquired audio/visual and other materials for the production of music videos and the creation of original artwork, promoted Jimi's image and provided new and unique marketing tools to keep Jimi's music alive[;]" "Alan Douglas is the *owner* of common law and

[3]As the California Supreme Court explained in *In re Chantal S.* (1996) 13 Cal.4th 196, 201 [51 Cal.Rptr.2d 866, 913 P.2d 1075], " 'family court' refers to the activities of one or more superior court judicial officers who handle litigation arising under the Family Code. It is not a separate court with special jurisdiction, but is instead the superior court performing one of its general duties."

statutory copyrights and other property rights in and to all *sound recordings of Jimi Hendrix*, known or unknown, in which Alan Douglas served as the producer/engineer[;]" "Alan Douglas is the *owner* of common law and statutory copyrights and other property rights in and to the *compilations of sound recordings of Jimi Hendrix*, known or unknown, in which Alan Douglas served as the producer/engineer[;]" "Alan Douglas is the *owner* of common law and statutory copyrights and other property rights in and to *packaging and promotional materials for album covers, merchandising and other items* for which Alan Douglas served as the producer/engineer[.]" (Italics added.)

Arteena alleged she had "only recently learned of the *facts* surrounding [Alan's] claim of ownership of such intellectual property rights, including but not limited to rights in the recordings and related products of Jimi Hendrix recordings, in that the District Court Litigation was reduced to a final disposition in and about January 1996," and that she brought this action with reasonable diligence. (Italics added.)

Arteena further pled that "[a]t all times . . . [she] had, and continues to have, a meritorious claim for her community share of community property in the prior Dissolution action, in that the property rights of [Alan] at issue in the Dissolution (and for which he has received to date far in excess of $15,000,000.00) were created and/or acquired during [the] . . . marriage . . . . [Alan] deliberately gave false testimony and perpetrated a fraud upon [Arteena] and upon this honorable Court . . . so as to retain sole control and ownership of such property and products for himself, . . . and to keep [Arteena] from her rightful community share therein. [¶] . . . [Arteena] has no adequate remedy at law other than this proceeding in equity in that, through no fault of her own, she did not discover the extrinsic fraud and perjury herein alleged until after the time had expired for appeal, seeking a new trial, or seeking relief under Code of Civil Procedure, Section 473."

Arteena also appended to her pleading a copy of Alan's property declaration in the dissolution proceeding, made under penalty of perjury, wherein Alan asserted his business interests consisted of the Alan Douglas Corporation with a gross fair market value of $1,000.

Arteena also appended to her complaint a copy of the following interrogatory from the federal action and Alan's response thereto: "Please identify the respective share of proceeds (in percentages) for each person who was to receive any of the proceeds under the terms of any proposed or actual sale of all or any part of the Hendrix Legacy to MCA. [¶] Answer: . . . Mr. Douglas responds that he will receive 25% of any net income from the sale to MCA."

Alan demurred on res judicata and statute of limitations grounds. The trial court overruled the demurrer and resorted to the Family Code, stating "Family Code section 2122(a) provides an exception to Res Judicata, and depends on factual issue, i.e. 'when plaintiff did discover or should have discovered the fraud.'"

b. *Alan's motion for summary judgment.*

On April 1, 1998, Alan filed a motion for summary judgment on the grounds the action is barred by the one-year statute of limitations set forth in section 2122, as well as by res judicata, in that Arteena's purported rights in the Hendrix music were litigated in the prior action.

With respect to the statute of limitations, Alan argued the action was barred because section 2122 requires an action to set aside a judgment based on fraud or perjury to be filed within one year after the aggrieved party either discovered, or should have discovered, the fraud or perjury. By way of evidentiary support, Alan's separate statement cited a series of allegations made by Arteena, prior to the entry of the further judgment on reserved issues in October 1992, to the effect that Alan was concealing his interest in the Hendrix music. Thus, according to Alan, Arteena was aware of the alleged fraud or perjury more than one year before commencing this action.

ˌWith respect to the res judicata defense, Alan contended Arteena had a full and fair opportunity in the prior action to litigate the issues raised in the instant complaint, namely, that he had concealed a community property interest in Hendrix's music through fraud and perjury, and therefore the instant complaint was barred. As evidentiary support, Alan's separate statement cited a series of facts to show Arteena's claims of fraud and perjury by Alan in concealing the Hendrix assets were litigated in the prior action.

c. *Arteena's opposition.*

Arteena contended the one-year limitations provision of section 2122 was inapplicable to this case because section 2129 specifies that section 2122 applies only to judgments entered on or after January 1, 1993, and the instant further judgment on reserved issues was entered in October 1992.

Arteena also argued the limitations provisions of section 2122 were tolled until she discovered *facts* constituting fraud and perjury, and she did not, and could not, have discovered the fact of Alan's concealment or perjury until he sought protection of his property rights in the federal action. In addition, Arteena asserted her claims were not barred by res judicata because Alan's

concealment of assets in the prior action constituted extrinsic fraud, and she brought this action with reasonable diligence after discovering the fraud.

Arteena's opposing separate statement was not in proper form as it did not respond to each of the facts alleged by Alan to be undisputed.[4] Instead, Arteena offered a series of "disputed material facts" to show her claims were not barred by section 2122 or by res judicata.

### d. *Trial court's ruling.*

On April 29, 1998, the matter came on for hearing. The trial court granted summary judgment, ruling as follows: "[Arteena] failed to file a timely opposition, and did not seek a continuance under the section provided for that purpose—Code of Civil Procedure section 437c(h). Further, [Arteena's] late-filed opposition papers did not contain a separate statement responding to each material fact contended by moving party to be undisputed. Both these failures violate Code of Civil Procedure section 437c(b), and the latter is sufficient ground, by itself, to grant the motion under Code of Civil Procedure section 437c(b). The former is sufficient ground to grant the motion under Los Angeles Superior Court Rule 9.15.[5] [¶] The burden shifted to [Arteena] pursuant to Code of Civil Procedure section 437c(o)(2), and [Arteena] failed to carry the burden because [Arteena] failed to file a separate statement stating whether [she] dispute[d] the facts contended by [Alan] to be undisputed, and if so, the evidence on which that dispute is based. Further the motion is deemed meritorious under [Local] Rule 9.15."

Arteena filed a timely appeal from the judgment.

### CONTENTIONS

Arteena contends: Alan's moving papers failed to meet the initial burden of establishing a complete defense, and therefore the trial court was precluded from granting summary judgment, irrespective of the absence of

---

[4]Code of Civil Procedure section 437c, subdivision (b), states in relevant part: "The opposition papers shall include a separate statement which responds to each of the material facts contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts which the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion."

[5]The Superior Court of Los Angeles County, Local Rules, rule 9.15 states in pertinent part: "FAILURE TO FILE WRITTEN OPPOSITION OR TO APPEAR. [¶] A party who has not timely filed written opposition to a motion or demurrer may not be afforded an opportunity to offer oral argument at the hearing. The failure to file opposition creates an inference that the motion or demurrer is meritorious. In such cases, the court may hear argument limited to a request for a continuance of the hearing in order to afford an opportunity for written opposition."

timely opposition papers in proper form; Alan's reliance on section 2122 is misplaced because the judgment she seeks to vacate was entered before the effective date of the statute; in any event, section 2122 does not apply to her eight common law causes of action which are independent of the family law aspect of this case; and the trial court abused its discretion in denying a continuance.

## DISCUSSION

### 1. *Standard of appellate review.*

■ Although this appeal involves family law principles, it arises from a summary judgment in a civil action; we review the matter pursuant to the usual standards.

As stated in *PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 590 [52 Cal.Rptr.2d 877], summary judgment "motions are to expedite litigation and eliminate needless trials. [Citation.] They are granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.]"

A defendant meets this burden upon such a motion by negating an essential element of the plaintiff's case, or by establishing a complete defense, or by demonstrating the absence of evidence to support the plaintiff's case. *Once the moving defendant has met this initial burden*, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists. (*PMC, Inc. v. Saban Entertainment, Inc., supra*, 45 Cal.App.4th at p. 590; *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482 [50 Cal.Rptr.2d 785].)

The trial court's ruling presented for our review is less than clear. In granting summary judgment for Alan, the trial court cited Arteena's belated opposition papers, as well as the absence of an opposing separate statement in proper form. However, the trial court also ruled "[t]he burden shifted to [Arteena] pursuant to Code of Civil Procedure section 437c(o)(2), and [Arteena] failed to carry the burden . . . ." Under the statute, the burden does not shift to a plaintiff resisting summary judgment until a moving defendant has met his or her initial burden to negate the plaintiff's action.[6] Thus, the trial court apparently based its summary judgment ruling not only

---

[6]Code of Civil Procedure section 437C, subdivision (o)(2), states in relevant part: "(o) For purposes of motions for summary judgment and summary adjudication: [¶] . . . [¶] (2) A defendant or cross-defendant has met his or her burden of showing that a cause of action has

on Arteena's procedural failings, but also on the perceived merits of Alan's papers.

■ In any event, "the trial court's stated reasons for its ruling do not bind us. We review the ruling, not its rationale. [Citation.]" (*California Aviation, Inc. v. Leeds* (1991) 233 Cal.App.3d 724, 731 [284 Cal.Rptr. 687].) After "examining the facts before the trial judge on a summary judgment motion, we independently determine their effect as a matter of law. [Citation.]" (*Id.* at pp. 730-731.) Accordingly, we must determine de novo whether, on this record, Alan was entitled to summary judgment as a matter of law. (*Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 844 [30 Cal.Rptr.2d 768]; *Romero v. American President Lines, Ltd.* (1995) 38 Cal.App.4th 1199, 1202 [45 Cal.Rptr.2d 421].)

2. *Remedy of relief from a dissolution judgment codified in section 2120 et seq.*

a. *One year within which to seek relief on the grounds of fraud or perjury.*

In 1993, a chapter entitled Relief From Judgment was added to the Family Code. (§§ 2120-2129, added by Stats. 1993, ch. 219, § 108, pp. 1615-1617.) The statutory scheme authorizes an action or motion to set aside a dissolution judgment on specified grounds. (§§ 2122, 2125.) In adopting this chapter, the Legislature found "[t]he law governing the circumstances under which a judgment can be set aside, after the time for relief under Section 473 of the Code of Civil Procedure has passed, has been the subject of considerable confusion which has led to increased litigation and unpredictable and inconsistent decisions at the trial and appellate levels." (§ 2120, subd. (d).)

To that end, the Legislature specified in section 2122 the time within which to bring an action or motion to set aside a dissolution judgment based on fraud, perjury and other grounds. ■■ Section 2122 provides in relevant part: "The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following: (a) *Actual fraud* where the defrauded party was kept

no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. *Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.* The plaintiff or cross-complainant may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Italics added.)

in ignorance or in some other manner, other than his or her own lack of care or attention, was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within *one year* after the date on which the complaining party either did discover, or should have discovered, the fraud. (b) *Perjury.* An action or motion based on perjury in the preliminary or final declaration of disclosure or in the current income and expense statement shall be brought within *one year* after the date on which the complaining party either did discover, or should have discovered, the perjury." (Italics added.)[7]

### b. *Section 2120 et seq. creates an exception to res judicata.*

The statutory scheme creates an exception to res judicata, based on the recognition that "[t]he public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct." (§ 2120, subd. (c).)

██ " ' "The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination." ' [Citations.]" (*Dale v. Dale* (1998) 66 Cal.App.4th 1172, 1183 [78 Cal.Rptr.2d 513], italics deleted.) ██ Thus, a spouse who conceals the existence of community assets, thereby depriving the other spouse of the opportunity fully to present his or her case in a dissolution proceeding, cannot claim the judgment of dissolution is final and conclusive. (*Ibid.*)

---

[7]Prior to the enactment of section 2120 et seq., the law recognized a distinction between extrinsic fraud, which was a basis for setting aside a judgment even after the expiration of the six-month period under Code of Civil Procedure section 473, and intrinsic fraud, such as perjury, which was not a valid ground for relief. (*In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138-140 [63 Cal.Rptr.2d 894].) " 'Extrinsic fraud occurs when a party is deprived of his opportunity to present his claim or defense to the court, where he was kept in ignorance or in some other manner fraudulently prevented from fully participating in the proceeding. [Citation.] *Examples of extrinsic fraud are: concealment of the existence of a community property asset,* failure to give notice of the action to the other party, convincing the other party not to obtain counsel because the matter will not proceed (and it does proceed). [Citation.] A party's representation of the value of an asset, favorable to himself, does not constitute extrinsic fraud. [Citation.] . . . [¶ 'Fraud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary, but has unreasonably neglected to do so. [Citation.] Such a claim of fraud goes to the merits of the prior proceeding which the moving party should have guarded against at the time. Where the defrauded party failed to take advantage of liberal discovery policies to fully investigate his or her claim, any fraud is intrinsic fraud. [Citation.]' [Citation.]" (*In re Marriage of Varner, supra,* 55 Cal.App.4th at p. 140, italics added.)

As to assets "for which a judgment or part of a judgment is set aside, the date of valuation shall be subject to equitable considerations. The court shall equally divide the asset . . . , *unless the court finds upon good cause shown that the interests of justice require an unequal division.*" (§ 2126, italics added.)[8]

c. *The one-year statute of limitations set forth in section 2122 is applicable to Arteena's action because the appellate judgment in the dissolution proceeding was entered in 1994, after the effective date of said statute.*

With respect to the application of the one-year provision of section 2122, section 2129 provides: "This chapter applies to judgments entered on or after January 1, 1993."

■ Arteena contends this statutory scheme is inapplicable because the trial court entered the dissolution judgment (further judgment on reserved issues) on October 19, 1992. The argument is unpersuasive because the definition of judgment is not limited to a decision entered by a trial court.

The filing of an opinion in a reviewing court, which concludes with a statement of the judgment, constitutes the rendition of the judgment on appeal. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 722, p. 755.) A judgment is defined by the code as "the final determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577; *Metropolitan Water Dist. v. Adams* (1942) 19 Cal.2d 463, 468 [122 P.2d 257].) It is " 'the law's last word in a judicial controversy.' " (*Metropolitan Water Dist.,* *supra,* at p. 468 [judgment entered in Supreme Court].)

Here, the judgment in the dissolution matter was entered on June 13, 1994, at which time Division Seven of this district issued its opinion affirming the further judgment on reserved issues. Because said judgment was entered after January 1, 1993, section 2122 applies. (§ 2129.)

---

[8]Similarly, section 2556 provides: "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. *In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability.*" (Italics added.)

Also, section 1101, subdivision (h), provides the remedies for breach of fiduciary duty by a spouse "when the breach falls within the ambit of Section 3294 of the Civil Code shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty."

Arteena commenced the instant action on May 1, 1997. Therefore, if the cause of action accrued any earlier than May 1, 1996, the action is time-barred.

### d. *Section 2122 governs this action in its entirety.*

■ Arteena contends that even assuming section 2122 is applicable, its reach does not extend to her "non-family law" causes of action. The argument fails.

Although Arteena has alleged numerous causes of action herein, this action is nothing other than an attack on the judgment in the marital dissolution proceeding on the grounds of fraud and perjury. The Legislature enacted section 2120 et seq. to address these very circumstances. As indicated, it found "[t]he law governing the circumstances under which a judgment can be set aside, . . . has been the subject of considerable confusion[.]" (§ 2120, subd. (d).) To clarify this area, it adopted section 2122 to govern the time within which to bring an action to set aside a dissolution judgment based on fraud, perjury and other grounds.

We conclude section 2122 governs this matter in its entirety, irrespective of the various legal theories Arteena has pled in her complaint.

### 3. *The nature of Arteena's remedy under section 2120 et seq. is a traditional setting aside of the judgment; the Dale decision, allowing a tort action for concealment of community assets, is inoperative.*

■ Given the numerous theories Arteena has pled, another threshold issue is the nature of the remedy available under section 2120 et seq. The remedy under the statutory scheme is a traditional setting aside of the judgment. (See, e.g., § 2122 [grounds and time limits "for a motion to set aside a judgment"].) Upon vacating the judgment, in whole or in part, a trial court is empowered to make an unequal distribution of the concealed assets, in the interests of justice. (§ 2126.) However, no tort action lies for concealment of community assets in a dissolution proceeding.

We are aware that *Dale* held a defrauded spouse may bring a tort action for concealment of community assets as an alternative to moving to set aside the dissolution judgment. (*Dale v. Dale, supra,* 66 Cal.App.4th at pp. 1178-1183.) However, the *Dale* decision clearly was a major departure from

existing law.[9] Where a civil judgment is procured by extrinsic fraud, the normal remedy is to seek equitable relief from the judgment, not to sue in tort. (See, e.g., *Brink v. Brink* (1984) 155 Cal.App.3d 218, 220 [202 Cal.Rptr. 57] [aggrieved spouse brought an independent action in equity to vacate the judgment of dissolution on ground of extrinsic fraud]; see generally 8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, § 214 et seq., p. 718 et seq.; *id.*, § 223, pp. 727-728.) Moreover, the absolute litigation privilege of Civil Code section 47, subdivision (b), bars derivative tort actions and "applies to all torts other than malicious prosecution, including fraud, negligence and negligent misrepresentation. [Citation.]" (*Harris v. King* (1998) 60 Cal.App.4th 1185, 1188 [70 Cal.Rptr.2d 790]; accord, *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 28-29 [61 Cal.Rptr.2d 518].)

In any event, leaving aside the soundness of the *Dale* decision, it is no longer operative. *Dale* itself observed, "[f]or judgments entered on or after January 1, 1993, Family Code section 2120 et seq. provides a comprehensive statutory scheme for setting aside such judgments on grounds of actual fraud, perjury, duress, mental incapacity, or mistake. (See *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 136-137 . . . .)" (*Dale v. Dale, supra,* 66 Cal.App.4th at p. 1179, fn. 5.) *Dale* explained: "Because the judgment at issue here was entered in 1988, we have no occasion to address the effect of Family Code section 2120 et seq. on the viability of a tort action for concealment of community assets." (*Ibid.*)

Admittedly, *Dale* was not decided until 1998, and therefore it was not a consideration when section 2120 et seq. was enacted. Nonetheless, there is nothing in the statutory scheme to suggest that relief thereunder includes a remedy in tort.

*Section 2128 further confirms the limited nature of the statutory remedy.*

The above conclusion that no tort remedy lies finds further support in section 2128, which addresses the construction of this statutory scheme with other provisions. Section 2128 states: "(a) Nothing in this chapter prohibits a party from seeking relief under Section 2556. [(See fn. 8, *ante*.)] [¶] (b) Nothing in this chapter changes existing law with respect to contract remedies where the contract has not been merged or incorporated into a judgment. [¶] (c) Nothing in this chapter is intended to restrict a family law court from acting as a court of equity. [¶] (d) Nothing in this chapter is intended to limit existing law with respect to the modification or enforcement of support

---

[9]Our research reveals the *Dale* decision has not been cited by any California court.

orders. [¶] (e) Nothing in this chapter affects the rights of a bona fide lessee, purchaser, or encumbrancer for value of real property."

Under the statutory construction doctrine of *expressio unius est exclusio alterius*, the expression of certain things in a statute necessarily involves exclusion of other things not expressed. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13 [241 Cal.Rptr. 67, 743 P.2d 1323]; *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1161 [278 Cal.Rptr. 614, 805 P.2d 873].) Accordingly, the enumeration in section 2128 of other remedies which coexist with section 2120 et seq. by implication excludes other remedies not specified therein.

Therefore, we conclude Arteena's remedy under section 2120 et seq. is a traditional setting aside of the judgment, to the exclusion of an action in tort arising out of the underlying proceeding.

*4. Grant of summary judgment must be reversed because Alan failed to establish the action is barred by section 2122.*

In moving for summary judgment, Alan contended this action is time-barred pursuant to section 2122, which requires an action alleging fraud or perjury to be filed within one year after the date the complaining party discovered, or should have discovered, the fraud or perjury in the underlying action.

In support thereof, Alan cited the following: Arteena's allegation in 1986 during the underlying dissolution proceeding that Alan possessed ownership rights in Hendrix's music; a declaration filed by Arteena in the dissolution proceeding in 1992, wherein she claimed she was always aware of Alan's allegedly untrue statements and perjury; a trial brief filed in 1992, wherein Arteena asserted that Alan "hid the fact he has and is being paid very large royalties from the Jimi Hendrix estate;" an exhibit attached to the 1992 trial brief, wherein Arteena alleged that Alan committed perjury by failing to reveal his share in the Hendrix estate; a 1992 declaration in support of the motion to vacate, wherein Arteena asserted Alan perjured himself and committed fraud by not disclosing hidden assets; and a supplemental declaration in 1992, wherein Arteena again claimed Alan concealed information relating to his work as a producer of Hendrix recordings.

As explained below, contrary to Alan's position, these allegations by Arteena between the years 1986 and 1992 do not establish *as a matter of law* that Arteena then knew or should have known of the *facts* constituting the fraud or perjury. Merely because during those years, Arteena suspected Alan

had concealed and misstated community assets does not compel the conclusion that Arteena at that juncture either discovered, or should have discovered, the necessary *facts* constituting the fraud or perjury.

a. *Section 2122 is analogous to Code of Civil Procedure section 338; one-year period under section 2122 began to run when Arteena discovered, or should have discovered, the facts constituting the fraud or perjury.*

Section 2122 is analogous to Code of Civil Procedure 338, subdivision (d), pertaining to the statute of limitations for *fraud*. Section 338, subdivision (d), provides: "The cause of action . . . is not to be deemed to have accrued *until the discovery*, by the aggrieved party [or his or her agent], *of the facts constituting the fraud . . . .*" (Italics added.) We observe section 2122 refers to the date the plaintiff "either did discover, or should have discovered, the fraud," whereas section 338 refers to the date the plaintiff discovered "the *facts* constituting the fraud." (Italics added.) Although section 2122 is not explicit on this point, by a parity of reasoning, we believe that under section 2122, as under Code of Civil Procedure section 338, subdivision (d), it is the discovery of the *facts* constituting the fraud or perjury that triggers the running of the statute of limitations.

Thus, the statute of limitations under section 2122 accrues as of the date the plaintiff either discovered or should have discovered *the facts constituting the fraud or perjury*, not the date the plaintiff began to suspect the fraud or perjury.

Here, the *evidence* from the federal action, which is pertinent to Arteena's fraud and perjury claims, did not exist during the years 1986 through 1992. Obviously, Arteena could not have discovered these facts until some time after Alan, in the years 1994 and 1995, filed pleadings, gave discovery responses and otherwise took a position in the federal action that was diametrically opposed to his testimony in the dissolution proceeding.

The factual issue on summary judgment was the date Arteena discovered or should have discovered the *facts* constituting the fraud or perjury. As the moving party on summary judgment, it was *Alan's burden* in the first instance to establish Arteena either discovered or should have discovered the facts constituting his alleged fraud or perjury more than one year before commencing her action. Alan did not make the necessary showing. Alan merely cited Arteena's past allegations of fraud and perjury, and relying on those allegations, he surmises that Arteena must have discovered the necessary facts during the years 1986 through 1992. In essence, Alan equates

Arteena's allegations of fraud and perjury with her discovery of the facts constituting the fraud and perjury. However, Alan's reference to Arteena's unsupported allegations fell far short of a showing by Alan that Arteena then knew or should have known the facts constituting the fraud or perjury. The *evidence* from the federal action, now relied on by Arteena, did not exist between the years 1986 and 1992 and therefore could not have been discovered at that earlier time.

Because Alan failed to make a showing the action was time-barred, the burden did not shift to Arteena to show that a triable issue existed as to Alan's affirmative defense. (Code Civ. Proc., § 437c, subd. (*o*)(2).)

 b. *In view of fiduciary relationship between spouses, Arteena was entitled to rely on Alan's testimony in the dissolution proceeding.*

In the dissolution proceeding, Alan repeatedly denied the existence of any interest in the Hendrix properties. His property declaration and trial testimony in that proceeding were unequivocal in that regard. By taking that position in the dissolution proceeding, he succeeded in obtaining a judgment which determined there was no community property. Now, in resisting Arteena's attack on the judgment, he in effect asserts Arteena had no right to rely on his sworn testimony in the underlying proceeding. Alan cannot have it both ways.

Under Alan's theory, as soon as one begins to *suspect* fraud or perjury, one is deemed to have discovered the facts constituting the fraud or perjury, even though the perpetrator through a course of perjurious conduct may have succeeded in concealing evidence the victim requires to prove the claim. Alan's theory has no support in logic or in law and it flies in the face of the fiduciary relationship that exists between spouses until such time as the marital assets are divided.

Under the code, "[e]ach spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities *in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence* as specified in Section 721, *until such time as the assets and liabilities have been divided* by the parties or by a court. This duty includes the obligation to make *full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest* and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and

debts, upon request." (§ 1100, subd. (e), italics added.) The fiduciary relationship and broad disclosure obligation continue postseparation until the marital property is divided. (§§ 1100, subd. (e), 2102; *In re Marriage of Varner, supra,* 55 Cal.App.4th at p. 142; see generally Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2000) ¶ 9:340 et seq., p. 9-74.3 et seq.)

Therefore, Arteena was entitled to rely on Alan's testimony in the dissolution trial, wherein he asserted: he never had any ownership interest either in Are You Experienced? Ltd., or in the Hendrix estate and that he had never acquired any royalty or other interest in the record catalogs involving Hendrix, except for three records he produced prior to the marriage. When Arteena came across new information from the federal action, wherein Alan asserted a position that was diametrically opposed to his testimony in the dissolution matter, Arteena was entitled to seek equitable relief pursuant to section 2120 et seq. to vacate the dissolution judgment based on these new facts, which did not exist at the time the underlying matter was adjudicated.[10]

### c. *Arteena's procedural failings immaterial.*

As noted, in granting summary judgment, the trial court based its decision in part on Arteena's failure to file a proper opposing separate statement and the untimeliness of her papers. However, as discussed, it was

---

[10]We are mindful of the rule that "the validity of a summary judgment is to be determined solely by the sufficiency of the affidavits which were before the court when the motion was heard, and this court will consider only the facts before the trial court at the time it ruled on the motion [citations]." (*Jacobs v. Retail Clerks Union, Local 1222* (1975) 49 Cal.App.3d 959, 966 [123 Cal.Rptr. 309].) Here, however, the parties concur it is appropriate for this court to take judicial notice of the following materials from the federal action: (1) a stipulation and order of dismissal with prejudice; and (2) a settlement agreement, to which Alan is a party. (Evid. Code, §§ 452, subd. (d), 455, 459.) Under these circumstances, the fact these materials were not before the trial court is not an impediment to our taking judicial notice thereof.

The settlement agreement states, inter alia: "[Alan] has been involved in the production and exploitation of the Hendrix properties and has asserted that, as a result, he acquired certain interests, including copyright and other ownership interests, therein." The agreement requires Alan and others to execute and deliver assignments of "all of their right, title, claims and interests in and to the Hendrix properties," in exchange for certain consideration. In addition, under the agreement Alan was granted an exclusive license to produce an album incorporating certain live performances of Jimi Hendrix, as well as the right to produce a documentary film.

It is not this court's role to determine the nature and extent of Alan's interest in the Hendrix properties, or to evaluate the consideration he received by way of the settlement agreement. Rather, the issues at this juncture are Alan's concealment in the dissolution proceeding of his interest or claimed interest in the Hendrix properties, as well as the timeliness of Arteena's action for equitable relief from the judgment. As explained, because Alan failed to show Arteena was aware of the facts constituting the fraud or perjury more than one year before instituting this action, the grant of summary judgment was error.

Alan's burden, in the first instance, to establish his right to the relief he sought. (Code Civ. Proc., § 437c, subd. (o)(2).) Until that was done, Arteena had no burden to produce opposing evidence or to disprove anything at all. (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 338 [282 Cal.Rptr. 368].) Therefore, the procedural defects in Arteena's opposition did not entitle Alan to summary judgment. Accordingly, the grant of summary judgment was error.

### 5. *Alan's res judicata argument is meritless.*

▮▮▮▮▮ As an alternative ground for upholding the summary judgment, Alan asserts Arteena's action is barred by res judicata in that Arteena had a full and fair opportunity to litigate her claims of fraud and perjury in the underlying action. The argument does not detain us.

Section 2120 et seq. authorizes a dissolution judgment to be vacated, irrespective of res judicata concerns, where the judgment was procured by fraud or perjury. In such cases, the interest in assuring finality of judgments is outweighed by other considerations. (§ 2120, subd. (c).) A spouse who conceals the existence of community assets, thereby depriving the other spouse of the opportunity fully to present his or her case in a dissolution proceeding, cannot claim the judgment of dissolution is conclusive and immune from subsequent attack. Therefore, the summary judgment cannot be sustained on res judicata grounds.

### 6. *Remaining issues not reached.*

In view of the above, it is unnecessary to address Arteena's contention the trial court erred in denying a continuance, or any other issues.

### DISPOSITION

The judgment is reversed. Because this matter arises under the Family Code, the matter is remanded to the family court for further proceedings. (*In re Chantal S., supra*, 13 Cal.4th at p. 201.)

Arteena is awarded her costs on appeal.

Croskey, J., and Kitching, J., concurred.